557 A.2d 1095

**COMMONWEALTH of Pennsylvania**

v.

**Luigi Anthony SACCOL, a/k/a Louis Saccol, a/k/a Louie Saccol.**

Superior Court of Pennsylvania.

Submitted Nov. 7, 1988.

Filed April 21, 1989.

162

James B. Yelovich, District Attorney, Somerset, for Com.
Michael L. Stibich, Somerset, for appellee.

Before MELINSON, WATKINS and CERCONE, JJ.

CERCONE, Judge:

This is an appeal by the Commonwealth from the lower court's order granting a new trial for defendant/appellee. The issue to be decided is whether, in a prosecution under the Wiretapping and Electronic Surveillance Control Act (hereinafter "the Act"),[1] the Commonwealth or the defendant has the burden to prove the presence or lack of authority or consent to intercept and disclose information derived from a wiretapping or electronic surveillance operation.

The appellee in this case was charged with three violations under § 5703 of the Act[2] for unlawfully intercepting a wire communication and disclosing and using its contents. He was found guilty by a jury of intercepting and disclosing, and not guilty of using the contents of the communication.

The events which gave rise to the charges and conviction of appellee are as follows: the appellee was a police officer in Richland Township, a suburb of Johnstown in Cambria County. He was also a partner in Richland Cleaners, a dry cleaning establishment located in the Township. Together with a friend of his, appellee installed an interceptor/recording device on his telephone at the cleaning establishment for the purpose of monitoring any incoming or outgoing calls made or received by a female employee at the establishment, with whom appellee was romantically involved. As it turned out, no phone calls were made or received by the female employee. However, a telephone call by one of the employees, a minor, was intercepted on the recording device or tape disclosing that the minor was involved in a series of burglaries. Appellee spoke to several police officers on the force about this information and

1. Act of October 4, 1978, P.L. 831, No. 164, Section 2, as amended, 18 Pa.C.S.A., §§ 5701—5726.

2. 18 Pa.C.S.A. 5703, Interception, disclosure or use of wire or oral communications.

played the tape for them several times. This activity on the part of the appellee resulted in criminal charges against the minor and his co-defendants and the indictment and conviction of appellee on wiretapping charges. The lower court granted appellee a new trial because, in its opinion, the Commonwealth failed to carry the burden of proving that appellee lacked authority or consent to a wiretapping operation, which authority or consent the court found to be essential elements of the crime. We respectfully disagree with the lower court on both procedural and substantive grounds and reverse the lower court's grant of a new trial.

In *Commonwealth v. Mott*, 372 Pa.Super. 133, 539 A.2d 365 (1988) we said:

> Moreover, the law is settled in Pennsylvania that since the trial court denied the demurrer and the appellant thereafter presented a defense, his ability to challenge the propriety of the order denying the demurrer is foreclosed. *See Commonwealth v. Ilgenfritz,*, 466 Pa. 345, 353 A.2d 387 (1976); *Commonwealth v. Olds*, 322 Pa.Super. 442, 469 A.2d 1072 (1983). At this point a challenge to the correctness of the trial judge's ruling can only be regarded as a challenge to the sufficiency of the evidence. *Commonwealth v. Hammock*, 319 Pa.Super. 497, 466 A.2d 653 (1983).

*Id.*, 372 Pa.Superior Ct. at 139–140, 539 A.2d at 368 (footnote omitted).

In this case, defendant/appellee's demurrer was denied and appellee's counsel then chose to proceed with the presentation of his client's defense. In this procedural process, the jury is the recipient and sifter of all the evidence presented in the case by the Commonwealth and by the appellee in seeking the truth. The Commonwealth's evidence pertaining to the appellee's playing of the tapes for the information of his fellow police officers was sufficient to show that he had willfully and knowingly installed an interceptor/recording device on his telephone. This information was unsolicited. Chief of Police James Mock testified that no one in his police department in Richland Town-

ship, including appellee, had either local or state authority to intercept wire communications. This testimony coming from the Chief concerning his information and knowledge about the operation of his department was evidence for consideration by the jury and if believed was enough to prove appellee's lack of authority to operate a wiretapping device beyond a reasonable doubt. The verdict indicated the jury's acceptance of the Chief's testimony. The appellee fortified his non-authority and lack of consent on cross examination as follows:

Q. Did you have any authorization to conduct a wiretap of that phone?

A. I didn't believe it was a wiretap, sir.

Q. Just answer my question, did you have any authorization yes or no, please?

A. No.

■ As to the issue of whether any person gave appellee consent to conduct the wiretap operation, the only persons who could do so, other than officials under properly recognized duties which Chief Mock testified did not exist in his department, were the minor employee and his co-defendants. Clearly, they did not give appellee consent in aid of their own arrest and incrimination.

We find all the evidence presented in this case to amply and sufficiently support the verdict that appellee was in violation of the Act beyond a reasonable doubt.

Even if this case were without procedural difficulties, we find the substantive issue, as to which party has the burden of proving either the lack or the presence of authority or consent to conduct a wiretapping operation, in favor of the Commonwealth's position.

Section 5703 of the Act, *supra*, under which appellee was charged and convicted reads as follows:

**§ 5703. Interception, disclosure or use of wire or oral communications**

Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:

(1) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire or oral communication;

(2) willfully discloses or endeavors to disclose to any other person the contents of any wire or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication; or

(3) willfully uses or endeavors to use the contents of any wire or oral communications, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire or oral communication.

The lower court in granting a new trial did so on the basis that the provisions in § 5704 and § 5708 of the Act, *infra,* set forth essential elements of the crime which were necessary for the Commonwealth to prove beyond a reasonable doubt in order to convict appellee under the language of § 5703.

Section 5704 reads as follows:

**§ 5704. Exceptions to prohibition on interception and disclosure of communications.**

It shall not be unlawful under this chapter for:

(1) An operator of a switchboard, or an officer, agent or employee of a communication common carrier, whose facilities are used in the transmission of a wire communication, to intercept, disclose or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the carrier of such communication. However, no communication common carrier shall utilize service observing or random monitoring except for mechanical or service quality control checks.

(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investi-

gative or law enforcement officer to intercept a wire or oral communication involving suspected criminal activities where:

(i) such officer or person is a party to the communication; or

(ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be made, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception; however such interception shall be subject to the recording and record keeping requirements of section 5714(a) (relating to recording of intercepted communications) and that the Attorney General, deputy attorney general, district attorney or assistant district attorney authorizing the interception shall be the custodian of recorded evidence obtained therefrom.

(3) Police and emergency communications systems to record telephone communications coming into and going out of the communications system of the Pennsylvania Emergency Management Agency or a police department, fire department or county emergency center, if:

(i) the telephones thereof are limited to the exclusive use of the communication system for administrative purposes and provided the communication system employs a periodic warning which indicates to the parties to the conversation that the call is being recorded;

(ii) all recordings made pursuant to this clause, all notes made therefrom, and all transcriptions thereof may be destroyed at any time, unless required with regards to a pending matter; and

(iii) at least one nonrecorded telephone line is made available for public use at the Pennsylvania Emergency Management Agency and at each police department, fire department or county emergency center.

(4) A person, to intercept a wire or oral communication, where all parties to the communication have given prior consent to such interception.

(5) Any investigative or law enforcement officer, or communications common carrier acting at the direction of an investigative or law enforcement officer or in the normal course of its business, to use a pen register.

(6) Personnel of any public utility to record telephone conversations with utility customers or the general public relating to receiving and dispatching of emergency and service calls provided there is, during such recording, a periodic warning which indicates to the parties to the conversation that the call is being recorded.

(7) A user, or any officer, employee or agent of such user, to record telephone communications between himself and a contractor or designer, or any officer, employee or agent of such contractor or designer, pertaining to excavation or demolition work or other related matters, if the user or its agent indicates to the parties to the conversation that the call will be or is being recorded. The terms "user," "contractor," "demolition work," "designer" and "excavation work" shall have the meanings given to them in the act of December 10, 1974 (P.L. 852, No. 287), referred to as the Underground Utility Line Protection Law; and a one call system shall be considered for this purpose to be an agent of any user which is a member thereof. (Footnote omitted.)

The pertinent part of § 5708 is as follows:

§ 5708. Order authorizing interception of wire or oral communications

(a) **Authorization.** Except in cases referred to in subsection (b), the Attorney General, or, during the ab-

sence or incapacity of the Attorney General, a deputy attorney general designated in writing by the Attorney General or the district attorney or, during the absence or incapacity of the district attorney, an assistant district attorney designated in writing by the district attorney of the county wherein the interception is to be made, may make written application to any Superior Court judge for an order authorizing the interception of a wire or oral communication by the investigative or law enforcement officers or agency having responsibility for an investigation involving suspected criminal activities when such interception may provide evidence of the commission of any of the following offenses, or may provide evidence aiding in the apprehension of the perpetrator or perpetrators of any of the following offenses:

. . . .

Under § 5708 there follows a long list of crimes for which wire or oral communications may be intercepted by persons authorized either by the nature of their position or upon proper application to any judge of the superior court.

Our supreme court explicated the proper approach to use when construing a statute in *Commonwealth v. Bigelow*, 484 Pa. 476, 399 A.2d 392 (1979):

In interpreting the statute before us, our goal is to ascertain and effectuate the intention of the legislature. In so doing we are called upon to use a common sense approach in which words and phrases are examined according to established rules of grammar and according to their common usage. We are guided by the presumptions that the legislature did not intend a result that is absurd, unreasonable or impossible of execution.

*Id.*, 484 Pa. at 481–482, 399 A.2d at 394 (citations omitted).

■ In following these guidelines we find that the language in § 5704 and § 5708 does not set forth elements of the crimes that may be perpetrated under the Act, but only sets forth the identity of persons for whom it is not unlawful to intercept wire or oral communications. These sec-

tions list an entire litany and category of persons so identified which is the fundamental purpose of those two sections.

The language of § 5703 under which appellee was charged and convicted carries a succinct definition of the crime, to wit, that any person who *willfully* intercepts and discloses information derived from the interception of wire or oral communications is guilty of a third degree felony. Each subsection (1), (2) and (3) of § 5703 begins with the word "willfully" indicating the crux and basis of the mental intent involved in the crime. While the word "willful" is not specifically defined by the Act, the general definition contained in Title 18 states that "a requirement that an offense be committed willfully is satisfied if a person acts knowingly with respect to the material elements of the offense, unless a purpose to impose further requirements appears." 18 Pa.C.S.A. § 302(g). Black's Law Dictionary, Fourth Edition, defines the word "willful" as involving turpitude, generally meaning evil purpose or criminal intent. Once this willful conduct is proven, the Commonwealth has succeeded in establishing the essential element of the crime beyond a reasonable doubt.

In a reading of the three sections involved in this case (§§ 5703, 5704 and 5708), contrary to appellee's argument, it would place an unreasonable burden on the Commonwealth if it were forced into bringing all the persons or their pertinent records into court in order to prove either a lack of authority to operate, or lack of consent to operate, a device to intercept a wire or oral communication. Attorneys General and their deputies and District Attorneys and their assistants are not always incumbents in office when a wiretap case comes up for trial. Locating the whereabouts of the persons previously in authority would in itself present a formidable task. The same holds true with the other persons enumerated in § 5704 and § 5708.

But this is not the most important objection to appellee's claim that the Commonwealth must carry the burdens under § 5704 and § 5708 relating to authority or consent on

grounds they comprise the essential elements of the crimes charged under § 5703. The language in § 5704 and § 5708 constitutes provisos on authority or consent and exceptions to culpability for the persons enumerated therein. As the court said in *Commonwealth v. Bigelow, supra,*

> The purpose of a proviso is to qualify, restrain or otherwise modify the general language of the enabling provision. *Commonwealth ex rel Margiotti v. Lawrence,* 326 Pa. 526, 531, 193 A. 46, 48 (1937). Material placed in proviso is not an element of crime but rather a matter of defense and need not be either plead or proved by the prosecution. *U.S. v. Winnicki,* 151 F.2d 56, 58 (7th Cir.1945).

*Id.,* 484 Pa. at 482–3, 399 A.2d at 395.

It is interesting that in *Bigelow* the court found that the burden of proving licensure to carry a firearm was on the defendant because of the structure of § 6108 of the Uniform Firearms Act, 18 Pa.C.S.A. § 6108 (1973), and the nature of the prohibition described in that section. Four years earlier in *Commonwealth v. McNeil,* 461 Pa. 709, 715, 337 A.2d 840, 843 (1975), the court found that the burden was on the Commonwealth to prove lack of licensure to carry a weapon because of the nature and structure of § 6106 of the same Act. Thus, it is a matter of examining the structure of the statute or each of its sections and the nature of the prohibition in determining the issue of the burdens to be carried as has been done in many instances in cases cited by both parties. We find those cases and others cited by the Commonwealth more compelling in arriving at our decision.

We have a number of cases which have placed the burden on the defendant to prove he was authorized or exempted from culpability in the performance of certain conduct or acts. In *Commonwealth v. Harrison,* 137 Pa.Super. 279, 283, 8 A.2d 733, 735 (1939), involving non-registration regarding sales of securities, we said: "In a case of this nature the burden is never upon the Commonwealth to prove negatively that a defendant does not come within a

proviso or exception of a statute." *See also* 1 *Wharton's Criminal Evidence,* Section 202. This principle was also upheld in a case involving non-certification in rendering public utility services. *See Commonwealth v. Bitzer,* 163 Pa.Super. 386, 62 A.2d 108 (1948) (where Commonwealth has proved elements necessary to support prima facie case, defendant has burden to show by preponderance of evidence that he comes within an excusable exception to offense charged). More recently, in *Commonwealth v. Stawinsky,* 234 Pa.Super. 308, 339 A.2d 91 (1975), *partially overruled, Commonwealth v. Sojourner,* 268 Pa.Super. 488, 408 A.2d 1108 (1979), we held that proof of required registration to distribute and sell a controlled substance was not a necessary element of a violation of the Controlled Substance Device, Drugs and Cosmetic Act, 35 Pa.C.S.A. § 780–101—780–144.[3] However, where the defendant comes forward with some evidence that he was authorized to possess a controlled substance, the burden shifts to the Commonwealth to prove nonauthorization beyond a reasonable doubt. *See Commonw v. McFarland,* 252 Pa.Super. 523, 533, 382 A.2d 465, 470 (1977) (whether a statutory clause sets forth a necessary element of a crime depends on the behavior the General Assembly intended to prohibit); *see Commonwealth v. Sojourner,* 268 Pa.Super. 472, 408 A.2d 1100 (1978), *on rehearing,* 268 Pa.Super. 488, 408 A.2d 1108 (1979) (use of inference to prove necessary element of crime is not barred by due process requirement; however, fact inferred must follow beyond reasonable doubt from facts proved).

In reading § 5704 and § 5708 we find that the exemption clauses in those sections do not refer to *conduct,* i.e., to essential elements of the crime of willfully intercepting wire or oral communications, but to *persons* for whom it is not

---

**3.** The holding in *Commonwealth v. Stawinsky, supra,* was overruled only to the extent that it supported the conclusion a defendant must prove some aspect of authorization to possess and deliver a controlled substance by a preponderance of the evidence in order to be acquitted of a violation charged under the Controlled Substance, Device, Drugs and Cosmetic Act, supra. *Commonwealth v. Sojourner,* 268 Pa.Super. 488, 497–505, 408 A.2d 1108, 1113–1117 (1979).

unlawful to intercept wire or oral communication. Thus the exemptions in § 5704 and § 5708 apply if the accused has attained a certain status; they have nothing to do with the conduct that would constitute a crime if performed by someone else, like the appellee in this case.

In *McKelvey v. United States*, 260 U.S. 353, 43 S.Ct. 132, 67 L.Ed. 301 (1922), the Supreme Court of the United States had occasion to state:

> By repeated decisions it has come to be a settled rule in this jurisdiction that an indictment or other pleading founded on a general provision defining the elements of an offense, or of a right conferred, need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere, and that it is incumbent on one who relies on such an exception to set it up and establish it.

*Id.* at 357, 43 S.Ct. at 134 (citations omitted). *Commonwealth v. Bigelow, supra,* further explains:

> The United States Supreme Court has never required the prosecution to negate the language of a proviso. Such a requirement would have the effect of limiting the government to allegations it might be wholly unable to prove, and without subserving any useful purpose to the defendant. While the rules of criminal pleading require that the accused shall be fully apprised of the charge made against him, it should, after all, be born in mind that the object of criminal proceedings is to convict the guilty, as well as to shield the innocent; and no impracticable standards of particularity should be set up, whereby the government may be entrapped into making allegations which it would be impossible to prove.... Neither in criminal nor in civil pleading is it required to anticipate or negative a defense.... 'In general,' says Chitty, 'all matters of defense must come from the defendant, and need not be anticipated or stated by prosecutor.'

*Id.* 484 Pa. at 483, 399 A.2d at 395 (citations and quotes omitted).

In *Commonwealth v. Stoffan*, 228 Pa.Super. 127, 323 A.2d 318 (1974), our court found *Commonwealth v. Neal*, 78 Pa.Super. 216 (1922) useful in interpreting certain exemption clauses in the Controlled Substance, Drug and Cosmetic Act, *supra*. In deciding whether the exemption clauses referred to elements of charged crimes, this court enunciated the following test:

> When a statute defining an offense contains an exception, in the enacting clause, which is so incorporated with the language defining the offense that the ingredients of the offense cannot be accurately and clearly described if the exception is omitted, the rules of good pleading require that an indictment founded upon the statute must allege enough to show that the accused is not within the exception, but if the language of the clause defining the offense is so entirely separable from the exception that the ingredients constituting the offense may be accurately and clearly defined without any reference to the exception, the pleader may safely omit any such reference, as the matter contained in the exception is the matter of defense and must be shown by the accused.

*Stoffan, supra* 228 Pa.Super. at 140, 323 A.2d at 324.

Without a central information center, the Commonwealth in every prosecution of this kind would have to locate state and local law enforcement officers whether in or out of office to determine from their testimony or from their records whether appellee came within the provisos and exceptions of § 5704 and § 5708. This would also be true with all the other persons listed in the various subsections of those sections, if the Commonwealth were called upon to prove that appellee was not a member of an approved function, or not exempt under any of the numerous other exemptions set forth in § 5704 and § 5708. The Legislature would not have intended the Commonwealth to sustain such an impossible burden. Thus, we hold that the burden of providing evidence of authority or of consent to conduct a wiretap interception falls upon the appellee as a matter of defense.

The order of the lower court is vacated and this case is remanded for further proceedings consistent herewith. Jurisdiction is relinquished.

MELINSON, J., files a concurring statement.

MELINSON, Judge, concurring:

In reviewing a trial court's grant of a new trial, this court's standard of review "generally is whether the trial court palpably and clearly abused its discretion or committed an error of law which controlled the outcome of the case." *Westinghouse Elevator Co. v. Herron*, 514 Pa. 252, 256, 523 A.2d 723, 725 (1987). *See also Thompson v. City of Philadelphia*, 507 Pa. 592, 493 A.2d 669 (1985); *Nicholson v. Garris*, 418 Pa. 146, 210 A.2d 164 (1965). Abuse of discretion is not the issue, however, when the trial court gives only a single reason for its grant of a new trial. In that instance, the validity of the legal justification of the trial court is the sole issue on appeal. *Westinghouse*, 514 Pa. at 256, 523 A.2d at 723. As set forth in *Penneys v. Segal*, 410 Pa. 308, 311, 189 A.2d 185, 187 (1963):

> When it clearly appears from the opinion of the court below on the new trial motion, "that except for the reason relied upon by the court for granting a new trial, judgment would have been entered on the verdict, the action of the lower court becomes reviewable, not for an abuse of discretion, but for the legal merit of the sole and exclusive reason assigned for the granting of the new trial...." [citations omitted].

The sole reason which the lower court gave for its grant of a new trial in this case was that the Commonwealth had the burden of proof to negate the exceptions and authorizations set forth in Sections 5704 and 5708 of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.Cons.Stat. Ann. Section 5701 *et seq.*, and did not undertake to do so.

For the reasons stated in Judge Cercone's able analysis on this issue, the trial court's ruling was an error of law. For this reason, I concur in the reversal of the trial court's order granting the Commonwealth (Appellant) a new trial.