**Commonwealth v. Aukstakalnis**

140

*James E. Gavin, assistant district attorney,* for the Commonwealth.

*Thomas S. Roman,* for defendant.

KELLER, *J.,* February 6, 1995—This is a case of cruel and patently excessive punishment. Defendant, John Aukstakalnis, was convicted of endangering welfare of a child, simple assault, and harassment following a jury trial before this court on August 4 and 5, 1994.[1]

---

1. 18 Pa.C.S. §4304 (Supp. 1994); 18 Pa.C.S. §2701(a)(1) (1983); 18 Pa.C.S. §2709(1) (1994).

Defendant was sentenced to two years under the supervision of the Berks County Probation Office on August 15, 1994. On August 25, 1994, defendant filed a motion for post sentence relief, which this court denied on November 30, 1994. On December 30, 1994, defendant filed a notice of appeal from the order denying his post sentence motion.

Defendant's motion for post sentence relief challenged the sufficiency of the Commonwealth's evidence, the court's failure to grant pretrial relief, and the court's failure to grant his motion for judgment of acquittal. Within his challenges to the sufficiency of the evidence, defendant specifically alleged that there was insufficient evidence to establish criminal intent; to establish that he violated a duty of care, protection, or support; or to establish lack of justification. This opinion is written pursuant to Pa.R.A.P. 1925(a) and, for the following reasons, we disagree with defendant's complaints and request that his appeal from the order denying his motion for post sentence relief be denied.

## STATEMENT OF FACTS

On Saturday, February 12, 1994, 14 year old Jason Miller lived with his mother, Debra Aukstakalnis, and stepfather, defendant John Aukstakalnis, at 1311 North 10th Street in the City of Reading, County of Berks, Commonwealth of Pennsylvania. At that time, defendant and Mrs. Aukstakalnis were responsible for Jason. At approximately 5 p.m. that day, Jason walked his mother to work and then continued on to his girlfriend's home. Jason stayed at his girlfriend's home until approximately 9 p.m., in spite of the fact that he was grounded and supposed to return to his own home directly after leaving his mother. (N.T. pp. 42-49, 71-73, 88.)

As Jason was walking home from his girlfriend's house, his mother and defendant drove up in a Ford truck and stopped in front of their house. Defendant, who had been driving, rushed out of the truck, began yelling, and moved quickly towards Jason. Before Jason could turn away, defendant grabbed him by the throat and threw him down into the snow. Defendant, an adult male, then jumped on top of the 105 to 115 pound boy and placed his knees on the boy's chest. Defendant proceeded to strike Jason about the face and head with a closed fist. While striking Jason more than five times, defendant also rubbed snow into Jason's face. Throughout the attack, defendant continued to jump on Jason's chest with his knees. Eventually, defendant stopped beating Jason, who was able to get up a short time later. At trial Jason stated that he was scared, physically hurt, degraded, and felt like he "wasn't worth anything" following the incident. As a result of the beating, Jason suffered numerous cuts and bruises about his face and neck. (N.T. pp. 49-61, 88.)

On the following Monday, Jason's mother and the defendant kept Jason home from school. While at a friend's house after school on Tuesday, Jason contacted the police. At City Hall that same day, the police took photographs of Jason. Jason's injuries depicted in the photographs were inflicted by the defendant. (N.T. pp. 61-67, 88.)

## I. *Sufficiency of the Evidence*

Defendant alleges that the evidence was not sufficient to sustain the guilty verdicts. Specifically, defendant alleges that his criminal intent was not established; that the Commonwealth failed to prove that he violated a duty of care, protection or support; and that the Commonwealth failed to prove that his conduct was not

justified. The evidence presented was sufficient and the jury could reasonably have determined all of the elements of the crimes charged to have been established beyond a reasonable doubt.

"The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt." *Commonwealth v. Chmiel,* 536 Pa. 244, 247, 639 A.2d 9, 10 (1994). The Commonwealth presented sufficient evidence as to all of the elements of each crime in the instant case.

## A. Defendant's Criminal Intent

Defendant contends there was insufficient evidence to establish his criminal intent for any of the crimes charged. For the following reasons, we disagree.

Defendant was convicted of endangering welfare of a child, 18 Pa.C.S. §4304 (Supp. 1994). "The mens rea required for this crime is a knowing violation of a duty of care." *Commonwealth v. Cottam,* 420 Pa. Super. 311, 344, 616 A.2d 988, 1005 (1992).

"A person acts knowingly with respect to a material element of an offense when: (i) if the element involves the nature of his conduct or attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result." 18 Pa.C.S. §302(b)(2) (1983).

A parent's duty of care includes the "responsibility to advance the physical, mental, and emotional health

of their children, and extreme acts or grave omissions which adversely affect a child may come within the scope of [endangering welfare of a child]." *Commonwealth v. Ogin,* 373 Pa. Super. 116, 123, 540 A.2d 549, 553 (1988), *allocatur denied,* 521 Pa. 611, 557 A.2d 343 (1989). The Commonwealth presented sufficient evidence to establish that defendant knowingly violated his duty of care beyond a reasonable doubt.

In the instant case, the jury could have reasonably determined that the defendant was aware of his duty to care for, protect, or support Jason Miller based upon his role as Jason's live-in stepfather. In addition, Jason stated that defendant, along with Jason's mother, was responsible for him. The jury could have further determined that defendant was aware that his conduct and the circumstances surrounding his conduct threatened Jason's physical welfare. Specifically, defendant initiated the attack. Defendant, an adult, jumped on and repeatedly struck a much smaller boy. In fact, defendant's voluntary and overt actions constituted the very circumstances which placed Jason's welfare in danger. Viewing the foregoing facts in the light most favorable to the Commonwealth and drawing all proper inferences favorable to the Commonwealth, the jury could have reasonably determined that defendant acted knowingly, *i.e.,* that he was aware that his conduct violated his responsibility to advance Jason's physical, mental, and emotional health beyond a reasonable doubt.

Defendant was also convicted of simple assault, 18 Pa.C.S. §2701(a)(1) (1983). The mens rea for simple assault can be of two types. First, if the crime is simple assault-injury attempted, a specific intent to injure is required. *Commonwealth v. Mott,* 372 Pa. Super. 133, 139, 539 A.2d 365, 368 (1988), *new trial granted on other grounds,* 522 Pa. 487, 563 A.2d 1181 (1989).

"A person acts intentionally with respect to a material element when: (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result." 18 Pa.C.S. §302(b)(1) (1983).

Second, if the crime is simple assault-injury inflicted, "the actor can be charged for the crime if he acts recklessly as well as intentionally or knowingly causing injury." *Mott, supra* at 139, 539 A.2d at 368. Having already defined when a person acts knowingly, we note that

"[a] person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct." 18 Pa.C.S. §302(b)(3) (1983).

For either type of simple assault, the requisite standard of intent may be inferred from the circumstances surrounding the incident. *Commonwealth v. Polston,* 420 Pa. Super. 233, 252, 616 A.2d 669, 679 (1992), *allocatur denied,* 534 Pa. 638, 626 A.2d 1157 (1993).

The jury could reasonably infer that defendant possessed the requisite standard of intent beyond a reasonable doubt from the circumstances of the assault. Specifically, the number of blows, the severity of the blows, the results of the blows, the size differential between defendant and his victim, and the defendant's use of his knees on Jason's upper body permitted the jury to reasonably infer that it was defendant's conscious object to injure Jason Miller. Considering the very same facts, the jury could also reasonably infer that defendant was aware that his conduct would injure Jason or that he disregarded an unjustifiable risk that Jason would be injured by his conduct. In short, the Commonwealth presented sufficient evidence from which the jury could

infer that defendant intended to injure or knowingly or recklessly did injure Jason Miller.

Finally, defendant was convicted of harassment, 18 Pa.C.S. §2709(1) (Supp. 1994). The mens rea required for harassment is an intent to harass, annoy or alarm another person. *Id.* The intent to harass, alarm or annoy may be inferred from the totality of the circumstances. *Commonwealth v. Beck,* 295 Pa. Super. 154, 159, 441 A.2d 395, 398 (1982). Clearly, the jury could reasonably infer that defendant intended to harass, annoy, or alarm Jason Miller by shoving snow in Jason's face.

The Commonwealth presented evidence which, viewed in the light most favorable to the Commonwealth, including all proper inferences, was sufficient for the jury to find that defendant possessed the requisite criminal intent for each of the crimes charged. Accordingly, defendant's argument that the Commonwealth failed to establish his criminal intent is without merit.

### B. Violation of a Duty of Care, Protection, or Support

Defendant also alleges that the evidence was not sufficient to prove that he violated a duty of care, protection or support in violation of 18 Pa.C.S. §4304. However, that allegation is without merit.

A parent's extreme acts which adversely affect his child may come within the prohibition of section 4304. *Ogin, supra* at 122-23, 540 A.2d at 553. "Section 4304 is a comprehensive provision designed to penalize those who knowingly breach a legal duty to protect the well-being of children who are entrusted to their care." *Id.* "It is to be given meaning by reference to the common sense of the community." *Commonwealth v. Taylor,* 324

Pa. Super. 420, 426, 471 A.2d 1228, 1231 (1984). Based upon that standard, there was sufficient evidence from which the jury could reasonably find that defendant violated his duty of care, protection or support beyond a reasonable doubt.

Jason Miller weighed between 105 and 115 pounds when defendant, an adult, grabbed Jason by the throat, threw Jason to the ground, jumped on Jason's chest with his knees repeatedly, punched Jason in the face and head with a closed fist several times, and ground snow into Jason's face. These incidents were traumatic and created a danger of serious physical harm to Jason. Clearly, the jury could find that defendant's acts "were so contrary to 'the common sense of the community' as to rise to the level of criminal liability" under section 4304. *Ogin, supra* at 123, 540 A.2d at 553. Defendant's allegation to the contrary is meritless.

C. Justification Pursuant to 18 Pa.C.S. §509

Finally, defendant contends that there was not sufficient evidence to prove that his conduct was not justified pursuant to 18 Pa.C.S. §509(1)(i), (ii). Upon the facts presented, the jury could find a lack of justification beyond a reasonable doubt.

While it is axiomatic that parents have a privilege to subject their children to corporal punishment for misbehavior, there are limits as to the type and severity of such punishment. *Ogin, supra* at 125, 540 A.2d at 554. Such punishment remains privileged so long as:

"(1) The actor is the parent or guardian or other person similarly responsible for the general care and supervision of a minor or a person acting at the request of such parent, guardian or other responsible person and:

"(i) the force is used for the purpose of safeguarding or promoting the welfare of the minor, including the preventing or punishment of his misconduct; and

"(ii) the force used is not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation." 18 Pa.C.S. §509 (Supp. 1994).

Based upon the evidence the Commonwealth presented at trial, the jury could find that defendant's conduct was not authorized by section 509 beyond a reasonable doubt.

Based upon the same facts and inferences from which the jury could find criminal intent, the jury could find that defendant did not use force for the purpose of safeguarding or promoting Jason's welfare. The number and severity of the blows, the resulting injuries, and defendant's other acts during the beating permit the inference that the defendant did not act for the purposes set forth in section 509(1)(i). However, even if such facts and inferences were not sufficient to disprove section 509(1)(i), the facts and inferences were sufficient to establish that the force employed exceeded that which is privileged in section 509(1)(ii).

"[W]hen applying [section 509], [we] should focus not only on the degree of force exerted by the parent but also on the age and the physical and mental condition of the child who has been disciplined." *Ogin, supra* at 127, 540 A.2d at 555. We note that the evidence established that defendant employed an extreme amount of force. Further, Jason was a 14 year old boy, weighing between 105 and 115 pounds, at the time of the incident. Further, Jason stated that the incident left him feeling degraded and not "worth anything." Given such circumstances, the jury could have fairly concluded beyond

a reasonable doubt that defendant exceeded the scope of the privilege when he used force which was known to create at least a "substantial risk of . . . extreme pain or mental distress." *Id.* Accordingly, even if defendant could meet the standard in section 509(1)(i), the evidence was sufficient for the jury to find the absence of justification under section 509(1)(ii).

Defendant sets forth a number of claims challenging the sufficiency of the Commonwealth's evidence. However, as previously discussed, his claims are without merit.

## II. *Failure To Grant Pretrial Relief*

Defendant alleges error in this court's failure to grant his request for pretrial relief, *i.e.,* a writ of habeas corpus. The Pennsylvania Supreme Court has held that if it is determined at trial that the Commonwealth's evidence is sufficient to be submitted to the jury, then any deficiency in the presentation before a district justice is harmless. *Commonwealth v. Hess,* 489 Pa. 580, 590, 414 A.2d 1043, 1048 (1980). In determining whether to hold a defendant for court, the district justice at the preliminary hearing assesses whether the Commonwealth established a prima facie case of the defendant's guilt. Pa.R.Crim.P. 143(a). Similarly, a petition for a writ of habeas corpus at the pretrial stage also tests whether the Commonwealth has sufficient evidence to establish a prima facie case. *Commonwealth v. Scott,* 396 Pa. Super. 339, 349, 578 A.2d 933, 936 (1990), *allocatur denied,* 528 Pa. 629, 598 A.2d 283 (1991). Because the same standard is employed at preliminary hearings and pretrial habeas corpus hearings, the rule in *Hess* would logically apply in the instant case and the determination that the evidence of the Commonwealth was sufficient to be submitted to the jury renders

any alleged error at the pretrial hearing harmless. Defendant's claim is therefore without merit.

### III. *Failure To Grant Defendant's Motion for Judgment of Acquittal*

Defendant finally contends that this court erred when it failed to grant his motion for judgment of acquittal at the close of the Commonwealth's case and again upon the discharge of the jury. At either stage, a motion for judgment of acquittal permits a defendant to challenge the sufficiency of the evidence to sustain a conviction of one or more of the offenses charged. Pa. R.Crim.P. 1124. Having already discussed the evidence and found it sufficient on each and every charge, defendant's final claim does not constitute grounds for relief.

### IV. *Conclusion*

Defendant was convicted of a number of crimes stemming from his attack upon his stepson, Jason Miller. Defendant raised a number of issues on appeal challenging the sufficiency of the evidence. However, in viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could reasonably have determined all elements of the crimes to have been established beyond a reasonable doubt. As members of the community inherently endowed with common sense, the jury reviewed the Commonwealth's evidence and properly determined that defendant's conduct on February 12, 1994, was extreme, unjustified, and unlawful under the laws of this Commonwealth. We therefore request that defendant's appeal be denied.